UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————————

TIDE NATURAL GAS STORAGE I, L.P. and
TIDE NATURAL GAS STORAGE II, L.P.,

                Plaintiffs/Counterclaim
                Defendants,

        -against-                                   <u>Opinion & Order</u>
                                                10 Civ. 5821

FALCON GAS STORAGE COMPANY, INC.;

                Defendant/Counterclaim
                and Crossclaim Plaintiff,

ARCAPITA BANK B.S.C.; and ARCAPITA,
INC.;

                Defendants,

and HSBC BANK USA, NATIONAL
ASSOCIATION,

                Defendant/Crossclaim
                Defendant.
———————————————————————————

KIMBA M. WOOD, U.S.D.J.:

      Plaintiffs/Counterclaim Defendants Tide Natural Gas Storage I, L.P. and Tide

Natural Gas Storage II, L.P. (collectively, "Tide") bring this action against

Defendant/Counterclaim/Crossclaim Plaintiff Falcon Gas Storage Company, Inc.

("Falcon") and Defendants Arcapita Bank, B.S.C.(c) and Arcapita, Inc. (together,

"Arcapita").  Tide's claims—which sound in common law fraud, securities fraud, breach

of warranty, and breach of contract—arise out of Tide's purchase of Falcon's interest in

the NorTex Gas Storage Company, LLC ("NorTex").

Four motions are now before the Court.  First, Falcon and Arcapita (collectively "Defendants") move for judgment on the pleadings dismissing Tide's Complaint, pursuant to Federal Rule of Civil Procedure Rule 12(c).

The remaining three motions relate to funds that are currently being held in escrow pursuant to the purchase agreements for NorTex.  Tide, in the Fifth Cause of Action of its Complaint, seeks a permanent injunction restraining the disbursement of the escrowed funds.  Falcon and Arcapita move for partial summary judgment dismissing Tide's claim for a permanent injunction.  Falcon has also filed a Counterclaim and Crossclaim, the First Cause of Action of which seeks a judgment declaring that Defendant HSBC Bank USA, National Association ("HSBC") must disburse the escrowed funds to Falcon.  Falcon moves for partial summary judgment on this request for declaratory relief.  Finally, Tide cross-moves for an order of attachment against the debts and property of Falcon and Arcapita, in the event that the escrowed funds are released.

For the reasons stated below, the Court (a) DENIES Falcon's and Arcapita's motion for judgment on the pleadings; (b) DENIES Falcon's and Arcapita's motion for partial summary judgment dismissing the Fifth Cause of Action of Tide's Complaint; (c) DENIES Falcon's motion for partial summary judgment on the First Cause of Action of its Counterclaim and Crossclaim; and (d) DENIES Tide's cross-motion for an order of attachment.

**BACKGROUND**

## I.  The Underlying Dispute[1]

### A.  Tide's Purchase of NorTex

On March 15, 2010, Tide and Falcon entered into a Purchase Agreement in which Tide agreed to purchase Falcon's 100 percent interest in NorTex, an operator of two natural gas storage reservoirs in Texas for $515 million.  (Compl. ¶¶ 12-13.)  On March 29, 2010—two days before the NorTex acquisition was scheduled to close—a group of Falcon's minority shareholders filed lawsuits in Texas courts (collectively, the "Hopper Litigation") in an effort to stop the deal from closing.  (Plaintiff's Response to Defendants' Statement of Undisputed and Material Facts Pursuant to Rule 56.1 ("Pl.'s 56.1 Resp.") ¶ 15.)  The Hopper Litigation plaintiffs also filed notices of *lis pendens* in Jack and Eastland Counties, in which the NorTex facilities (the "Facilities") are located. (Id. ¶ 18.)

In order to ensure that the NorTex deal would close despite the Hopper Litigation, the parties to the instant action entered into an amended Purchase Agreement ("Amended Agreement") and an Escrow Agreement (collectively, the "Agreements").  The parties designed the Escrow Agreement to protect Tide from any expenses or liability that might be incurred in connection with the Hopper Litigation. (Id. ¶¶ 24, 36.)  The Escrow Agreement provided that $70 million of the purchase price (the "Escrowed Amount") would be placed into escrow with HSBC.  (Id.)

---

[1]  Unless otherwise noted, the following facts are undisputed and are taken from the parties' Local Rule 56.1 statements, affidavits, and other submissions.  The Court construes all evidence in a light most favorable to the non-moving party, and draws all inferences in the non-moving party's favor.  See, e.g., Sledge v. Kooi, 564 F.3d 105, 108 (2d Cir. 2009).

Disbursement of the Escrowed Amount is governed by Section 3.7(a) of the Amended Agreement. That provision states that Tide and Falcon "shall deliver to [HSBC] joint instructions to disburse the balance of the Escrowed Amount" upon the occurrence of either one of the following "Escrow Breakage Triggers":

> (i)      a final non-appealable order of each court of competent jurisdiction with respect to the Hopper Claim or
> (ii)     (A) an agreed dismissal with prejudice of the Hopper Claim . . . ,
>          (B) a complete release by all of the Participants under the Hopper Claim . . . , and
>          (C) the final non-appealable release or expungement of the Lis Pendens . . . .

(Anderson Decl., Ex. B § 3.7(a).) With the foregoing agreements in place, and with the Escrowed Amount deposited at HSBC, the NorTex transaction closed on April 1, 2010. (Pl.'s 56.1 Resp. ¶ 35.)

On July 27, 2010, Falcon and the Hopper Litigation plaintiffs entered into a written settlement agreement. (Id. ¶ 39.) The actions were dismissed with prejudice when the Hopper Litigation plaintiffs filed nonsuits in each of the courts in which their actions were pending, and the court in Eastland County entered orders expunging the notices of *lis pendens*. (Id. ¶¶ 40, 42.)

On August 2, 2010, Tide filed this lawsuit against Falcon and Arcapita. (Dkt. No. 1.)

## II. Procedural History

Tide's Complaint contains five claims for relief based on misstatements allegedly made by Falcon and Arcapita in connection with the sale of NorTex. (Compl. ¶¶ 10-11.) Tide states that Falcon made specific representations regarding the quantities and value of

"pad gas"[2] contained in the storage facilities, the operating costs associated with the consumption of fuel in the facilities' operation, and the source of hydrocarbons extracted during the operation of NorTex's natural gas liquid extraction plants.  (Id. at ¶ 14.)  Tide states that, after closing on the purchase of NorTex, it conducted engineering analyses that revealed a shortfall of billions of cubic feet of NorTex's pad gas.  (Id. at ¶ 25.)  Tide says that it also discovered that Falcon had neither recorded nor accounted for the fuel used to compress the gas for storage and that the consumption of fuel in that compression process had further depleted the quantities of gas within the facilities.  (Id. at ¶ 27.)  Finally, Tide states that it also learned that Falcon did not calculate or account for "shrinkage" in gas quantities resulting from the extraction of natural gas liquids from the storage facilities.  (Id. at ¶ 30.)  Tide estimates the combined economic impact of the gas shortfalls and omitted operating expenses at more than $70 million. (Id. at ¶¶ 37-39.)

Tide brings five claims for relief based on these misstatements.  First, Tide alleges that Falcon and Arcapita fraudulently misrepresented material facts about the value of NorTex on which Tide relied in its decision to purchase the facility.  Second, Tide alleges that Falcon breached express warranties that Falcon made in the Amended Agreement for NorTex.  Third, Tide brings a breach of contract claim, on the ground that Falcon failed to deliver all of the assets represented in the Amended Agreement.  Fourth, Tide claims that Falcon's misrepresentations violated section 10 and Rule 10b-5 of the Securities Exchange Act of 1934.  Finally, Tide seeks a permanent injunction restraining HSBC from disbursing any funds from the Escrow Account, except pursuant to Section 3.7 of the Purchase Agreement.

---

[2] Pad gas is the base amount of gas necessary to maintain storage field pressure and deliverability of the gas customers have stored in the facility.

Defendants Falcon and Arcapita answered Tide's Complaint, and Defendant Falcon filed a Counterclaim and Crossclaim (1) seeking a declaratory judgment ordering the disbursement of the funds in the Escrow Account and (2) alleging breach of contract by Tide.  (See Defs.' Ans. & Countercl., Dkt. No. 6.)  Tide asserted various affirmative defenses to Falcon's counterclaims, including that: (1) "Falcon's claims fail because [Falcon] is not entitled to enforce the provisions of agreements procured by fraud"; (2) "Falcon's claims fail because the fraud in the underlying transaction supersedes the obligations set forth in the Escrow and Purchase Agreements"; and (3) "Falcon's claims are barred because Tide is entitled to rescission of the Purchase Agreement."  (See Pl.'s Ans. to Defs.' Countercl., Dkt. No. 29, ¶¶ 46, 48, 52.)

## DISCUSSION

### I. Defendants' Motion for Judgment on the Pleadings

A.   <u>Overview</u>

Defendants move, pursuant to Rule 12(c), for judgment on the pleadings dismissing Claims I through IV of Tide's Complaint.  Defendants offer four main grounds on which they argue that the claims should be dismissed.  First, Defendants note that, in the Amended Agreement, Tide expressly disclaims reliance on any representations or warranties outside of Section IV of the Amended Agreement. Defendants argue that Claims I through IV of the Complaint are not actionable because they are based on alleged misrepresentations that were not included in Article IV. Second, Defendants note that because the Amended Agreement limits Tide's remedies to actions for breach of the indemnity provisions, Tide's common law fraud claim should be dismissed.  Third, Defendants contend that Tide failed to plead its federal securities fraud

claims with the particularity required under applicable law.  Finally, Defendants argue that Tide failed to support its common law fraud and securities fraud claims with adequate allegations of scienter.

      B.     Rule 12(c) Standard

In deciding a Rule 12(c) motion, courts "apply the same standard as that applicable to a motion under Rule 12(b)(6)."  Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010).  In order to survive a motion for judgment on the pleadings, a plaintiff must have pleaded sufficient factual allegations "to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Desiano v. Warner-Lambert & Co., 467 F.3d 85, 89 (2d Cir. 2006).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, -- U.S. --, 129 S.Ct. 1937, 1949 (2009).  The Court must accept as true all well-pleaded factual allegations in the complaint, and "draw[ ] all inferences in the plaintiff's favor."  Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006) (quotations omitted).

In considering a motion to dismiss, a court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference."  Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991). In addition, a court may consider a particular document, which is integral to the claims at issue, of which the plaintiff has notice.  Yak v. Bank Brussels Lambert, 252 F.3d 127, 130-31 (2d Cir. 2001).

      C.     Discussion

1.     Sections 4.26 and 5.5 Do Not Bar The Claims Asserted Here

Defendants first argue that Claims I through IV of Tide's Complaint must be dismissed because, in Sections 4.26 and 5.5 of the Amended Agreement, Tide disclaims reliance on any representations except those set forth in Article IV of the Amended Agreement.  (Defs.' Mem. of Law in Support of Their Mot. for Judgment on the Pleadings ("Defs.' Mem.") at 10-14.)  Section 4.26 of the Amended Agreement ("Section 4.26"), entitled "Disclaimer of Additional Representations and Warranties," provides, in pertinent part, that Falcon

> shall not be deemed to have made to [Tide] any representation or warranty <u>other than as expressly made in this Article IV or the schedules accompanying Article IV</u>.  Except as expressly set forth in this Article IV, [Falcon] disclaims all liability and responsibility for any representation, warranty, projection, forecast, statement, or information made, communicated or furnished . . . to [Tide] . . . .

(Declaration of Richard T. Marooney dated October 27, 2010 ("Marooney Decl.") Ex. 2 § 4.26 (emphasis added) (capitalization omitted).)[3]  Section 5.5 of the Amended Agreement ("Section 5.5"), entitled "Reliance," provides that Tide "has not relied on, nor is it relying on any statement, representation or warranty, either express or implied, concerning [NorTex], . . . other than those expressly made in Article IV or the Schedules accompanying Article IV."  (<u>Id.</u> § 5.5 (emphasis added).)

Tide, however, specifically alleges in its Complaint that it relied on two representations made by Defendants <u>in Article IV</u>.  Tide states that it relied on representations in Section 4.9 of the Amended Agreement ("Section 4.9") regarding the

---

[3] The Court considers the Amended Agreement and the Financial Statements referenced in Article IV of the Amended Agreement because they are integral to the Complaint and incorporated in it by reference, and they were documents that Tide had in its possession and upon which it relied in bringing suit. <u>Cortec Indus.</u>, 949 F.2d at 47.

accuracy of the Financial Statements Falcon provided in order to ascertain the value of

the pad gas in the storage reservoirs and the cost of fuel used to operate the facilities.

(Compl. ¶¶ 15, 20-21, 51-52.)  Tide also states that it relied on representations in Section

4.11 of the Amended Agreement ("Section 4.11") that there had not been any disposition

of material NorTex assets between March 31, 2009 and the closing.  In its complaint,

Tide alleges that both of those Article IV representations were false.  (Compl. ¶¶ 15, 20-

21, 51-52.)

      a.    <u>Alleged Misrepresentation in Section 4.9</u>

In pertinent part, Section 4.9 states:

> <u>[e]ach balance sheet included in the Financial Statements (including the
> related notes and schedules)</u> has been prepared in accordance with GAAP
> and <u>fairly presents in all material respects the consolidated financial
> position of [NorTex] and its Subsidiaries</u> as of the date of each such
> balance sheet. . . .

(Marooney Decl. Ex. 2 § 4.9 (emphasis added).) [4]

      Tide alleges that Section 4.9 contains misrepresentations because, contrary to its

terms, the Financial Statements (and related notes and schedules) do not "fairly present[ ]

in all material respects the consolidated financial position of [NorTex] and its

Subsidiaries . . . ." (<u>Id.</u> § 4.9.)  Tide contends that at least two specific components of the

Financial Statements render that representation false.

---

[4] "Financial Statements" is defined to include: (1) "the audited consolidated balance sheet
of [NorTex] and its Subsidiaries as of March 31, 2009, the audited consolidated
statements of income, members' equity and cash flows of [NorTex] and its Subsidiaries
for the twelve (12)-month period then ended"; and (2) "the unaudited consolidated
balance sheet of [NorTex] and its Subsidiaries as of December 31, 2009, the unaudited
consolidated statements of income, members' equity and cash flows of [NorTex] and its
Subsidiaries for the nine (9)-month period then ended."  (<u>Id.</u> § 1.1.)

First, "Note A" to the Financial Statements as of March 31, 2009 states that NorTex "includes recoverable pad gas (cushion gas) as a component of [the] property and equipment [table in the financial statement] at historical cost."  (Declaration of Sean Dolan dated September 9, 2010 ("Dolan Decl.") Ex. A at 7; Marooney Decl. Ex. 3 at 7.) Tide states that, immediately after closing on the purchase of NorTex, it discovered a shortfall in the quantities of pad and customer gas and that the Financial Statements therefore did not fairly present in all material respects NorTex's consolidated financial position.  (Compl. ¶ 25.)

Second, the Financial Statements include "Facility operating expenses" as a component of "Operating Expenses."  (Dolan Decl. Ex. A at 4; Marooney Decl. Ex. 3 at 4.)  Tide states that Falcon failed to properly account for and record the fuel used to compress gas in the storage facilities and also omitted material information from the operating expenses listed on the balance sheet.  (Compl. ¶ 27.)

Tide's allegations regarding misrepresentations in Section 4.9 are sufficient to state a plausible claim to relief that is not precluded by the terms of Sections 4.26 or 5.5 of the Amended Agreement.

  b.  <u>Alleged Misrepresentation in Section 4.11</u>

In pertinent part, Section 4.11 states that neither NorTex nor its subsidiaries experienced a "Material Adverse Effect,"[5] or a "disposition of any material assets" since March 31, 2009.  (Dolan Decl. Ex. A § 4.11; Marooney Decl. Ex. 2 § 4.11)

---

[5] "Material Adverse Effect" is defined as "any state of facts" that "is, or would [be] reasonably likely to be . . . materially adverse to the condition (financial or otherwise), business, results of operations, properties, assets or liabilities of [NorTex] and its Subsidiaries taken as a whole . . . ."  (Amended Agreement § 1.1.)

Tide contends that, contrary to the representation made in Section 4.11, NorTex experienced a change in material assets that adversely affected its financial condition during the relevant time period.  (Compl. ¶¶ 32-36.)  Defendants reply that Tide has failed to allege "any facts showing what the alleged 'Material Adverse Effect' actually is or how [Tide's] allegations fit within the definition of that term . . . ."  (Defs.' Mem. at 13.)

Tide alleges particular facts giving rise to its claim.  First, Tide alleges that, in early 2009, NorTex management communicated to Arcapita that the storage facilities were experiencing deliverability issues because of gas shortfalls.  (Compl. ¶ 33.)  Second, Tide alleges that, in October 2009, Falcon and Arcapita received an engineering report stating that either the gas inventory levels contained in the regulatory filings were inaccurate or that one of the storage facilities was losing gas.  (Compl. ¶ 34.)  Third, Tide alleges that, in late 2009 and early 2010, Falcon became aware that NorTex encountered further deliverability problems because of the shortfalls in pad gas. (Compl. ¶ 35.)

Defendants further contend that there exists no "benchmark" by which to establish whether the alleged shortfall in pad gas constitutes a "Material Adverse Effect," because the Purchase Agreement contains no representation regarding the amount or value of pad gas present in the Facilities.  As previously discussed, the Amended Agreement defines "Material Adverse Effect" to include "any state of facts . . . that . . . is, or would [be] reasonably likely to be . . . adverse to the condition (financial or otherwise) . . . of [NorTex] . . . ."  (Marooney Decl. Ex. 2 § 1.1 (emphasis added).)  The facts alleged by Tide would constitute a state of facts likely to adversely affect the condition of

NorTex.  The Amended Agreement nowhere requires the satisfaction of any additional benchmarks.

Tide's allegations regarding misrepresentations in Section 4.11 are sufficient to state a plausible claim to relief that is not precluded by the terms of Sections 4.26 or 5.5 of the Amended Agreement.

2.      Tide's Common Law Fraud Claim Is Not Barred By Section 10.7

Defendants contend that Section 10.7 of the Amended Agreement ("Section 10.7") bars Tide's common law fraud claim.  Section 10.7, entitled "Exclusive Remedy," states that the contractual indemnification provisions of the Amended Agreement provide the exclusive remedy as to all claims relating to the sale.  (Marooney Decl. Ex. 2 § 10.7.) Pursuant to Section 10.7, the parties purported to waive (1) "any and all other rights, claims and causes of action," and (2) "any and all tort claims and causes of action that may . . . relate to this Agreement (including any tort claim or cause of action . . . related to any representation or warranty made in or in connection with this Agreement or as an inducement to enter this Agreement.)"  (Id.)

New York courts enforce contractual waivers and exculpatory provisions such as those included in Section 10.7 of the Amended Agreement.  See, e.g., Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc., 84 N.Y.2d 430, 436 (1994); Kalisch-Jarcho, Inc. v. New York, 58 N.Y.2d 377, 384 (1983); Baidu, Inc. v. Register.com, Inc., 760 F. Supp. 2d 312, 317-18 (S.D.N.Y. 2010).

Nevertheless, "an exculpatory agreement, no matter how flat and unqualified its terms, will not exonerate a party from liability" for "willful or grossly negligent acts." Kalisch-Jarcho, 58 N.Y.2d at 384-85.  See also Turkish v. Kasenetz, 27 F.3d 23, 27-28

(2d Cir. 1994) ("It is well settled that parties cannot use contractual limitation of liability clauses to shield themselves from liability for their own fraudulent conduct."); Citibank, N.A. v. Itochu Int'l, Inc., No. 01 Civ. 6007, 2003 WL 1797847, at *2 (S.D.N.Y. Apr. 4, 2003) (same).  The New York Court of Appeals has emphasized that

> an exculpatory clause is unenforceable when, in contravention of acceptable notions of morality, the misconduct for which it would grant immunity smacks of intentional wrongdoing.  This can be explicit, as when it is fraudulent, malicious or prompted by the sinister intention of one acting in bad faith.  Or, when, as in gross negligence, it betokens a reckless indifference to the rights of others, it may be implicit.

Kalisch-Jarcho, Inc., 58 N.Y.2d at 385.  Whether the challenged conduct rises to the level of "intentional wrongdoing" is a question of fact.  See David Gutter Furs v. Jewelers Prot. Servs., Ltd., 79 N.Y.2d 1027, 1028-29 (1992); Sommer v. Fed. Signal Corp., 79 N.Y.2d 540, 554 (1992); Kalisch-Jarcho, Inc., 58 N.Y.2d at 384-385.

Because Tide's Complaint is replete with allegations that Defendants engaged in intentional wrongdoing, the Court cannot dismiss Tide's common law fraud claim pursuant to Section 10.7.[6]

3.      Tide's Fraud Claims Are Sufficiently Pleaded

---

[6] In a footnote, Defendants argue that Tide's common law fraud claim should also be dismissed as duplicative of its contract claim.  (See Defs.' Mem. at 15 n.6.)  As the Second Circuit has noted, a fraud claim may proceed in tandem with a contract claim where a defendant-seller allegedly misrepresented facts as to the present condition of its property, even though these facts were warranted in the parties' contract.  Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 184 (2d Cir. 2007) (citing Jo Ann Homes at Bellmore, Inc. v. Dworetz, 25 N.Y.2d 112, 119-20 (1969)).  That is, "New York distinguishes between a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement."  Allegheny Energy, 500 F.3d at 184.

Falcon and Arcapita argue that Tide's common law fraud claim (First Cause of Action) and its federal securities fraud claim (Fourth Cause of Action) fall short of the pleading standards required by Rule 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA") 15 U.S.C. § 78u-4(b). (Defs.' Mem. at 16.)

a.  Elements of the Claims

To state a claim for a violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, "a plaintiff must plead that the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff." Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir. 2000).

The elements of common law fraud in New York are "essentially the same" as those that must be alleged to state a claim under Section 10(b) and Rule 10b-5. In re Merrill Lynch Auction Rate Sec. Litig., No. 09 MD 2030, 2011 WL 1330847, at *11 (S.D.N.Y. Mar. 30, 2011) (quotations omitted) (noting that a plaintiff asserting a common law fraud claim must show: (1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with scienter or an intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) that such reliance caused damage to the plaintiff).

b.  Heightened Pleading Standards

Rule 9(b) of the Federal Rules of Civil Procedure sets forth heightened pleading requirements for fraud claims: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); see also In re Pfizer Inc. Sec. Litig., 584 F. Supp. 2d 621, 632-33 (S.D.N.Y. 2008).  This

standard requires plaintiffs to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (citations omitted).

Plaintiffs alleging violations of the federal securities laws must, in addition to the requirements of Rule 9(b), meet the heightened pleading standards set forth in the PSLRA. In pertinent part, the PSLRA requires such plaintiffs to "state with particularity both the facts constituting the alleged [securities fraud] violation" and the other elements of the 10(b) cause of action. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 313 (2007). This standard requires plaintiffs to (1) specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading, and (2) state with particularity facts giving rise to a "strong inference" that the defendant acted with the required state of mind. 15 U.S.C. § 78u–4(b)(1)-(2); Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap., Inc., 531 F.3d 190, 194 (2d Cir. 2008).

            c.      The Scienter Element

Plaintiffs may establish an inference of fraudulent intent by alleging facts that, if true, would (1) demonstrate that defendants had both the motive and the opportunity to commit fraud or (2) constitute strong circumstantial evidence of the defendants' conscious misbehavior or recklessness. Eternity Global Master Fund, Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168, 187 (2d Cir. 2004).

To qualify as "strong," an "inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, Inc., 551 U.S. at 314. The Tellabs Court

framed the inquiry as follows: "When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?"  Id. at 326.

The Second Circuit has summarized the foregoing by noting that the requisite "strong inference"

> may arise where the complaint sufficiently alleges that the defendants: (1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor.

Dynex Cap., Inc., 531 F.3d at 194 (citing Novak v. Kasaks, 216 F.3d 300, 311 (2d Cir. 2008)).

> d.    Tide's Fraud Claims Are Pleaded With Particularity

Defendants contend that Tide's fraud claims should be dismissed because they are not pleaded with the particularity required by Rule 9(b) and the PSLRA.  Specifically, Defendants argue that Tide has not (1) specified the statements that Tide alleges were fraudulent (Defs.' Mem. at 16-17); or (2) pleaded with particularity the falsity of the representations at issue (id. at 17; Defs.' Reply at 5).

As previously noted, the Complaint alleges with specificity that Sections 4.9 and 4.11 of the Amended Agreement contained fraudulent statements.  (See Compl. ¶¶ 20-21, 51-52, 59, 66 (quoting from Sections 4.9 and 4.11).)  Tide has specified statements in the Amended Agreement, identified Falcon as the party that made the statements, and explained what facts lead Tide to believe the statements were fraudulent.  Tide has thus satisfied the requirements of Rule 9(b) with regard to its claims against Falcon.

Although the Complaint's allegations against Arcapita are not a model of clarity, the Complaint does contain specific allegations of misrepresentations made by the Arcapita entities (Compl. ¶¶ 14-18; 22-24; 27-28; 31-36.)  For instance, the Complaint states that in January 2010 the Arcapita defendants, together with Falcon, provided Financial Statements for NorTex that contained inaccurate information regarding inventories of pad gas and operating expenses from fuel consumption.  (Id. ¶¶ 15-16.) Similarly, the Complaint alleges that, in the course of due diligence, the Arcapita entities and Falcon together provided Tide with a specific memorandum entitled "NGL Material Balance & Shrink," a particular Microsoft Excel file, and a slide presentation entitled "Material Balance."  (Id. ¶ 22.)  Tide alleges specific facts indicating that Arcapita knew that these documents were inaccurate but nevertheless provided them in response to Tide's queries, with the expectation that Tide would rely on them.  (Id. ¶¶ 22-23; 33-35.) Thus, the Complaint specifies false or deceptive statements it alleges were made by Arcapita and the contexts in which they were made, as well as the reasons why Tide believes they are false.  The Complaint is sufficiently pleaded to give Arcapita notice of the claims with which they are charged with the particularity required by Rule 9(b). Goldman v. Belden, 754 F.2d 1059, 1069-70 (2d Cir. 1985) (finding the complaint specific enough that it "gives each defendant notice of precisely what he is charged with. No more is required by Rule 9(b).").

In light of the foregoing, the Court finds that Tide has pleaded its fraud claims with regard to Falcon and Arcapita with the particularity required by Rule 9(b).

      e.      <u>Tide Has Alleged Facts Giving Rise to a Strong Inference of Scienter</u>

Defendants contend that Tide's common law fraud and federal securities fraud claims should be dismissed because they are not supported by allegations establishing scienter.  However, Tide has alleged facts sufficient to give to the "strong inference" of scienter that is required.

First, Tide alleges that the Defendants were aware of the existence of "shortfalls" in, and depletions of, pad gas at NorTex's Facilities.  Tide claims that, in early 2009, NorTex management advised Arcapita that the Facilities had "'deliverability issues' related to [pad] gas shortfalls."  (Compl. ¶ 33.)  Falcon and Arcapita allegedly declined to purchase additional pad gas to remedy the shortfalls.  (Id.)  According to Tide, Defendants instead caused NorTex to enter into "park-and-loan" arrangements in which NorTex "borrowed" pad gas from other sources.  (Id.)  Such arrangements allegedly "concealed the depleted pad gas and did nothing to correct the inaccurate records, flawed processes, and shoddy operations and recordkeeping that led to the overstatement of the quantities and values of the pad gas and customer gas . . . ."  (Id.)  Tide also alleges that, in late 2009 and early 2010, Falcon management learned that NorTex "was encountering additional deliverability issues due specifically to shortfalls [in] and depletion of pad gas."  (Id. ¶ 35.)

Second, Tide alleges that, in or around October 2009, Defendants received a report from Platt, Sparks & Associates, which made it clear that gas inventories reported in NorTex's regulatory filings were inaccurate, or that one of NorTex's Facilities was losing gas.  (Id. ¶ 34.)

Third, Tide alleges that Defendants (1) failed to conduct "regular and consistent shut-in pressure testing and related volumetric calculations and measurements of the

quantities of gas within the Storage Facilities," and thus (2) failed to ensure that NorTex's financial records were accurate.  (Id. ¶ 71.)  According to Tide, such failures "occurred during a period when deliverability problems indicated a critical need to perform these tests, calculations, and measurements[,] and to properly analyze and report the results."  (Id.)

Defendants allegedly failed to account for the foregoing, known inaccuracies in the Financial Statements.  (See, e.g., id. ¶¶ 33-35, 72.)  Tide has alleged facts that, if true, would constitute strong circumstantial evidence of Defendants' conscious misbehavior or recklessness.  See Eternity Global Master Fund, Ltd., 375 F.3d at 187.  Accepted as true, Tide's allegations would give rise to the inference (1) that Defendants knew that the representations in Sections 4.9 and 4.11 of the Purchase Agreement were false, see Novak, 216 F.3d at 311; or (2) that Defendants acted recklessly, because they knew facts or had access to information suggesting that statements made in Sections 4.9 and 4.11 were not accurate.  See id.

The Court finds that the resulting inference of scienter is "cogent and at least as compelling as any opposing inference of nonfraudulent intent."  See Tellabs, 551 U.S. at 314.  That is, when Tide's allegations are "accepted as true[,] and taken collectively," the Court concludes that a reasonable person would deem the inference of scienter at least as strong as any opposing inference.  Id.; see also Novak, 216 F.3d at 308.

D.  Summary

For the foregoing reasons, Defendants' motion for a judgment on the pleadings is DENIED.

**II. Defendants' Motion for Summary Judgment**

A.  <u>Defendants' Motion</u>

Falcon and Arcapita answered Tide's Complaint and Falcon also filed a Counterclaim and Crossclaim. Falcon and Arcapita now move for partial summary judgment on two claims.  (Dkt. No. 32.)  First, Defendants move for summary judgment on Tide's Fifth Cause of Action, arguing that, as a matter of law, Tide is not entitled to a permanent injunction restraining the funds in the Escrow Account.  Second, Defendants move for summary judgment on their first crossclaim, arguing that Falcon is entitled to the immediate disbursement of all funds remaining in the Escrow Account.

B.  <u>Summary Judgment Standard</u>

Summary judgment must be granted where, based on the pleadings, the discovery and disclosure materials, and any affidavits, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see</u> <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). "The role of the court in deciding a motion for summary judgment 'is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party.'" <u>Wilson v. Nw. Mut. Ins. Co.</u>, 625 F.3d 54, 59-60 (2d Cir. 2010) (quoting <u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 11 (2d Cir. 1986)).  A "genuine issue of material fact" exists if the evidence is such that a reasonable jury could find in favor of the non-moving party. <u>SCR Joint Venture L.P. v. Warshawsky</u>, 559 F.3d 133, 137 (2d Cir. 2009).  A "material" fact is one that might "affect the outcome of the suit under the governing law."  <u>Id.</u>  The moving party bears "the burden of demonstrating that no material fact exists."  <u>Miner v.</u>

Clinton Cnty., N.Y., 541 F.3d 464, 471 (2d Cir. 2008) (citing McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007)).

In determining whether summary judgment is appropriate, the Court must construe the evidence in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Sledge v. Kooi, 564 F.3d 105, 108 (2d Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50, 255 (1986)). To avoid summary judgment, the non-moving party must show sufficient evidence to support a claimed factual dispute, such that a judge or jury is required to resolve differing versions of events. See Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 206 (2d Cir. 2006) (citing Anderson, 477 U.S. at 248-49). Where the non-moving party relies on an affirmative defense to defeat summary judgment, that party must adduce evidence which—when viewed in a light most favorable to that party, and when drawing all reasonable inferences in that party's favor—"would permit judgment for the non-moving party on the basis of that defense." Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC, No. 01 Civ. 6600, 2005 WL 3370542, at *4 (S.D.N.Y. Dec. 12, 2005); see also WestRM-West Risk Mkts., Ltd. v. Lumbermens Mut. Cas. Co., 314 F. Supp. 2d 229, 232 (S.D.N.Y. 2004).

C. Tide's Fifth Cause of Action

In its Fifth Cause of Action, Tide seeks "a permanent injunction restraining Falcon and HSBC from disbursing any funds from the Escrow Account, except pursuant to the Expense Notices referenced in Section 3.7 of the Purchase Agreement." (Compl. ¶ 79.) Tide has not at this point moved for summary judgment on this, or any, claim and it is not clear from the Complaint whether Tide intends to seek injunctive relief during the

litigation or only at its conclusion.  Falcon and Arcapita, however, move for summary judgment arguing that Tide is not, as a matter of law, entitled to a permanent injunction.

The Defendants cite to Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Funding, Inc., in which the Supreme Court considered whether, in an action for money damages, a district court has the power to issue a preliminary injunction that prevents a defendant from transferring assets in which no lien or equitable interest is claimed.  527 U.S. 308, 310 (1999).  The Court held that a district court lacks the authority to issue a preliminary injunction restraining a defendant's funds pending adjudication of a damages claim.  Id. at 333.  The significance of Grupo Mexicano was that the plaintiff in that case was seeking a preliminary injunction "that would render unlawful conduct that would otherwise be permissible, in order to protect the anticipated judgment of the court."  Id. at 315.

Unless and until Tide moves for an injunction, Falcon's and Arcapita's motion for summary judgment is premature.  The Court accordingly DENIES Defendants' motion for partial summary judgment dismissing Tide's Fifth Cause of Action.

D.  Falcon's First Cause of Action

Falcon also moves for partial summary judgment on its request for declaratory relief as set forth in its Counterclaim and Crossclaim.  Specifically, Falcon seeks a judgment declaring that HSBC "should disburse the escrow funds to Falcon in accordance with the parties' agreements."  (Countercl. ¶ 3;  see also id. ¶¶ 30-32.)  Tide asserts that such agreements are not enforceable because they were procured by fraud.

1.    Threshold Issues

-22-

The Court must resolve two threshold issues before considering whether Falcon is entitled to partial summary judgment on this claim.

First, the Court considers whether any provisions in the Agreements bar Tide's fraud-based affirmative defense.  Second, the Court examines Falcon's contention that Tide's "further" performance under the Agreements cannot be excused, because Tide has already fully performed by paying the contractual purchase price for NorTex and the money in the Escrow Account.  (See Defs.' Reply at 5-7.)

a.      Waiver of Claims and Disclaimer of Representations

The Court first considers whether Tide may assert its fraud-based affirmative defense to performance of its obligations under the Amended Agreements.  As in its motion for a judgment on the pleadings, Falcon again contends that Tide is precluded from raising any fraud-related arguments because (1) Tide waived its right to assert tort "claims and causes of action" in Section 10.7; and (2) the alleged misrepresentations are not actionable under Section 4.26, which bars a party from relying on representations extrinsic to Article IV of the Purchase Agreement ("Article IV").  The Court briefly reexamines each of Falcon's contentions.

Section 10.7 states that the contractual indemnification provisions of the Agreement provide the exclusive remedy as to all claims relating to the Agreement. (Declaration of Jeremiah J. Anderson dated August 31, 2010 ("Anderson Decl.") Ex. A § 10.7.)  At issue now, however, is whether Falcon is entitled to summary judgment on its First Cause of Action, notwithstanding Tide's assertion of an affirmative defense. Section 10.7 does not, by its terms, waive any affirmative defenses, and Falcon does not argue otherwise.   Section 10.7 includes "claims and causes of action," but an affirmative

defense is not a claim but "a lineal descendent of the common law plea by way of 'confession and avoidance.'"  5 C. Wright & A. Miller, Federal Practice & Procedure § 1270 (3d ed.).  The Court therefore finds that Section 10.7 does not bar Tide's affirmative defense.

Falcon similarly argues that Tide cannot, consistent with Section 4.26 of the Purchase Agreement, "allege a fraud claim" based on misrepresentations extrinsic to Article IV.  (Defs.' SJ Reply at 8; see also Defs.' SJ Mem. at 10.)  As previously discussed, Section 4.26 provides that Falcon "shall not be deemed to have made to [Tide] any representation or warranty other than as expressly made in this Article IV or the schedules accompanying Article IV."  (Anderson Decl. Ex. A § 4.26 (capitalization omitted).)  Tide has submitted evidence in conjunction with this motion for summary judgment to further bolster its claims that statements in Sections 4.9 and 4.11 are false.

In its Rule 56.1 statements and accompanying declarations, Tide has submitted evidence to the effect that Defendants inflated the value of pad gas included in the Financial Statements by approximately $30 million.  (Compl. ¶ 73; Pl.'s Counterstatement. ¶¶ 90-94, 102-04; Dolan Decl. ¶¶ 13-14, 22-24; id. Ex. A-F, G.)  Tide has also submitted evidence to the effect that the Financial Statements failed to include the value of fuel burned as part of the "facility operating expenses," and that Defendants thus misstated such expenses by approximately $40 million.  (Compl. ¶ 73; Pl.'s Counterstatement ¶¶ 95-101; Dolan Decl. ¶ 16; id. Ex. A; Declaration of Mike Gallup dated September 9, 2010 ("Gallup Decl.") ¶ 22.)  The foregoing evidence gives rise to an issue of fact as to whether the representation contained in Section 4.9 that the Financial

Statements fairly presented in all material respects the consolidated financial position of NorTex was fraudulent.

Tide also alleges that statements in Section 4.11 are false because NorTex did experience a material adverse effect between March 31, 2009 and the closing date.  Tide offers evidence demonstrating that, in 2009 and early 2010, Falcon management became aware that NorTex was encountering deliverability issues due specifically to shortfalls and depletion of pad gas.  (Gallup Decl. ¶ 39, Exs. U-V.)  Tide alleges that Defendants did not disclose such issues to Tide.  (Gallup Decl. ¶ 23.)  Following its purchase of NorTex, Tide states that it learned that NorTex at that point had a shortfall in pad gas of over 6 billion cubic feet.  (Id. ¶¶ 14-15.)  NorTex cannot operate its business absent sufficient pad gas.  (Id. ¶ 7.)  The foregoing evidence raises an issue of fact as to whether, contrary to the representation expressly made in Section 4.11, NorTex experienced a "Material Adverse Effect" or a "disposition of any material assets" during the relevant time period.

In light of the foregoing, the Court finds that Sections 10.7 and 4.26 do not preclude Tide from offering evidence with respect to its fraud-based affirmative defense.

b.      Remaining Performance

Falcon contends that Tide's further performance under the Agreements cannot be excused because Tide has already fully performed and the money in the Escrow Account belonged to Falcon as soon as the escrow conditions were met.  (See Defs.' Reply at 5.)

Section 3 of the Escrow Agreement, entitled "Distributions from the Escrow Account," states that the Escrowed Amount "shall be . . . transferred only in accordance with Section 3.7 of the [Amended Agreement]."  (Anderson Decl. Ex. C § 3.)  Section 3.7

of the Amended Agreement provides that, upon the occurrence of either of the defined Escrow Breakage Triggers, the parties "shall deliver to [HSBC] joint instructions to disburse the balance of the Escrowed Amount . . . ." (Id. Ex. B § 3.7(a).)  Tide acknowledges that the Escrow Breakage Triggers have been satisfied, (see Marooney Decl. Ex. 9; Conf. Tr. 4:12), but contends that Defendants' fraud excuses Tide from fully performing Section 3.7—i.e., from issuing joint instructions to HSBC to release the Escrowed Amount to Falcon.

Falcon disputes the contention that any non-ministerial obligation under the Agreements remains to be performed.  (See Defs.' Reply at 7 n.6 ("The [Amended Agreement] does not give plaintiffs discretion in instructing the Escrow Agent.").) According to Falcon, "[w]hat entitles [it] to the release of the funds is not the joint instructions, but the satisfaction of the escrow conditions."  (Defs.' Reply at 7.)

Under New York law, property in escrow should be released only after the conditions precedent are satisfied.  See In re Pan Trading Corp., S.A., 125 B.R. 869, 878 (Bankr. S.D.N.Y. 1991) ("Only after the requisite conditions are satisfied, can an escrow be fully transferred to the grantee.").  Courts are generally reluctant to override the clear terms of an escrow agreement.  Netherby Ltd. v. G.V. Licensing, Inc., No. 92-4239, 1995 WL 491489, at *3 (S.D.N.Y. Aug. 17, 1995) ("Because there are no reasons to override the clear terms of the amended escrow agreement, and because none of the conditions for release of the escrowed funds contained in that agreement have been met, plaintiff's motion [to compel release of escrowed funds] is denied.").  In the case before the Court, however, the conditions for the release of the escrowed funds contained in the agreement have been met, creating a valid reason to override its terms.  Nevertheless, Tide argues

that fraud in the inducement of the contract means it should not be required to perform its obligations.

Because Tide claims that its remaining performance is excused by Falcon's fraud, the Court must determine whether Tide has presented specific facts related to that defense showing that there is a genuine issue of material fact.[7]  See, e.g., Internet Law Library, Inc., 2005 WL 3370542, at *4.  The Court now turns to that inquiry.

3.    Discussion

a.    Applicable Law

Pursuant to New York law,[8] a party may not compel performance of an agreement that was induced by fraud.  Nat'l Union Fire Ins. Co. v. Turtur, 892 F.2d 199, 203 (2d Cir. 1989) (citing cases).

To withstand Defendants' motion for summary judgment based on a defense of fraudulent inducement, Tide must come forward with evidence that would allow a reasonable jury to find, by clear and convincing evidence,[9] that each of the elements of fraud has been satisfied.  SCNB Corp. Fin. Ltd. v. Schuster, 877 F. Supp. 820, 826 (S.D.N.Y. 1994).  Accordingly, Tide must offer facts showing that there is a genuine

---

[7] Falcon cites to Marriott Corp. v. Rogers & Wells, 438 N.Y.S.2d 330 (1st Dep't 1981), for the proposition that the Escrowed Amount "belonged to Falcon, subject only to the satisfaction of the escrow conditions."  (Defs.' Reply at 6.)  As the Court has noted, however, the escrow "conditions" here have not been satisfied.  Marriott Corp. is inapposite for another reason: the party opposing the transfer of escrowed funds in that case did not raise an affirmative defense of fraud; indeed, there were no issues of fact warranting a denial of summary judgment in that case.  438 N.Y.S.2d at 331.

[8] The Purchase Agreement is governed by the laws of the State of New York.  (Anderson Decl. Ex. A § 11.5.)

[9] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("[C]lear-and-convincing standard of proof should be taken into account in ruling on summary judgment motions"); Glidepath Holding B.V. v. Spherion Corp., No. 04 Civ. 9758, 2010 WL 1372553, at *5, (S.D.N.Y. Mar. 26, 2010).

issue for trial as to the following elements: (1) that Defendants made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by Defendants, (5) that was made for the purpose of inducing Tide to rely upon it, (6) that Tide "rightfully did so rely," (7) in ignorance of its falsity, (8) to Tide's injury.  See Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994); Internet Law Library, Inc., 2005 WL 3370542, at *5; Cont'l Airlines, Inc. v. Lelakis, 943 F. Supp. 300, 305 (S.D.N.Y. 1996).

b.      Application of Law to Facts

In opposing the instant motion for partial summary judgment, Tide has adduced particularized evidence that would allow a reasonable jury to find, by clear and convincing evidence, that each of the elements of fraud has been satisfied.  See Schuster, 877 F. Supp. at 826.  As previously discussed, Tide has demonstrated that Falcon made two principal representations in Article IV of the Purchase Agreement that were allegedly false: (1) that "[c]omplete and accurate copies of the Financial Statements have been made available to [Tide]," and that "[e]ach balance sheet included in the Financial Statements (including the related notes and schedules) . . . fairly presents in all material respects the consolidated financial position of [NorTex]," (Anderson Decl. Ex. A § 4.9); and (2) that since March 31, 2009, NorTex has not experienced a "disposition of any material assets" or a "Material Adverse Effect," which is defined as "any state of facts" that is "materially adverse to the condition (financial or otherwise), business, results of operations, properties, assets or liabilities of [NorTex] . . . ."  (Anderson Decl. Ex. A § 4.9, § 1.1.)  These alleged misrepresentations, which related to the value of NorTex's current assets, were "plainly" material.  See, e.g., Cohen, 25 F.3d at 1172 (stating that

defendant's alleged overstatements regarding net income and the value of current assets "plainly were representations as to material facts").

Tide has also proffered sufficient evidence to raise issues of fact as to whether the alleged misrepresentations were (1) known to be false by Falcon, and (2) made for the purpose of inducing Tide to rely on them. First, Tide presents evidence to the effect that, by 2009, both Falcon and Arcapita knew that there was a shortfall of pad gas at one of NorTex's Facilities and that Defendants discussed restating NorTex's Financial Statements to address this shortfall, but never did so. (Pl.'s 56.1 Counterstatement ¶¶ 133-35, 139-43; Gallup Decl. ¶¶ 37-39, Exs. U-V.) Second, the evidence permits a reasonable inference that Defendants made the alleged misrepresentations for the purpose of inducing Tide's reliance: Section 10.6 of the Purchase Agreement states that each party "shall be entitled to rely upon the representations, warranties, covenants and agreements of the other Party set forth herein . . . ." (Anderson Decl. Ex. A § 10.6.)

Finally, the proffered evidence creates triable issues as to whether Tide (1) reasonably relied on the alleged misrepresentations, (2) in ignorance of their falsity, and (3) to Tide's injury. Tide has submitted testimony to the effect that it relied on the alleged misrepresentations in ignorance of their falsity. (See, e.g., Dolan Decl. ¶ 39; Pl.'s 56.1 Counterstatement ¶ 161.) The reasonableness of reliance is ordinarily a question of fact left to a jury. Glidepath Holding B.V., 2010 WL 1372553, at *8. Tide has also submitted evidence of the adverse consequences of Defendants' alleged fraud. (See Gallup Decl. ¶¶ 41-50; Pl.'s 56.1 Counterstatement ¶¶ 166-175.)

Because Tide has come forward with evidence that would allow a reasonable jury to find, by clear and convincing evidence, that each of the elements of fraud has been satisfied, Falcon is not, at least at this juncture, entitled to the declaratory relief it seeks.[10]

      F.     <u>Summary</u>

For the reasons stated above, the Court (1) DENIES Falcon's and Arcapita's motion for partial summary judgment dismissing Tide's Fifth Cause of Action; and (2) DENIES Falcon's and Arcapita's motion for partial summary judgment on the First Cause of Action of its Counterclaim.  (Dkt. No. 32.)

III.    <u>Tide's Motion to Attach the Escrowed Funds</u>

Tide cross-moves for an order of attachment "[i]n the event that this Court" grants Falcon's motion for partial summary judgment.  (<u>See</u> Pl.'s Mem., Dkt. No. 77, at 2; <u>see also</u> Pl.'s Mem., Dkt. No. 38, at 24.)

Because the Court has denied Falcon's motion for partial summary judgment, Tide's motion for attachment is DENIED as moot.  (Dkt. No. 82.)

---

[10]  In light of this conclusion, the Court need not address whether Tide's further performance of the Purchase Agreement is excused by Defendants' alleged material breach of the Purchase Agreement.  (<u>See</u> Pl.'s Opp. at 21-22.)

IV.    Conclusion

  The Court has considered Defendants' remaining contentions and finds them to be without merit.  For the reasons stated above, the Court (a) DENIES Defendants' motion for judgment on the pleadings (Dkt. No. 94); (b) DENIES Defendants' motion for partial summary judgment (Dkt. Entry No. 32.); and (c) DENIES Tide's cross-motion for an order of attachment (Dkt. No. 82).

  By no later than October 28, 2011, the parties shall submit via ECF and facsimile a Joint Status Letter detailing how they intend to proceed, and whether they wish to be referred to a magistrate judge for settlement discussions.  The parties shall attach to their Joint Status Letter a Scheduling Order that provides for this case to be tried no later than January 17, 2012.

    SO ORDERED.

DATED:    New York, New York
     September 28, 2011

             KIMBA M. WOOD
           United States District Judge

-31-